IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO.: 5:13-CV-0058-FL

| | |
|---|---|
| MICHELLE ANN TRAVIS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DEs 23, 25). The time for filing any responses or replies has expired and the motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), they have been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE 23) be DENIED, that the Defendant's Motion for Judgment on the Pleadings (DE 25) be GRANTED and that the Commissioner's final decision be affirmed.

**I. STATEMENT OF THE CASE**

Plaintiff protectively filed an application for supplemental security income and disability insurance benefits on June 28, 2010, alleging a disability beginning on March 15, 2010. The application was denied initially and upon reconsideration. On October 27, 2011, a hearing was held before an Administrative Law Judge ("ALJ") who determined that plaintiff was not disabled during the relevant time period in a decision dated January 13, 2012. On October 9, 2012, the Appeals Council denied plaintiff's request for review of the ALJ decision, and plaintiff filed this

action on January 29, 2013, for review of the final decision of the Commissioner.

## II. STANDARD OF REVIEW

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . .

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

**III. ANALYSIS**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

*Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001).

The ALJ followed the sequential evaluation in this case. At step one, the ALJ found that plaintiff had not engaged in gainful employment since the alleged onset date, March 15, 2010. At step two, the ALJ found that plaintiff had the following severe impairments: obesity; back pain with minimal disc disease of the lumbar spine; dysthymia; posttraumatic stress disorder; and panic disorder. However, at step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a light work with the following restrictions: restricted to performing only simple, routine, repetitive tasks with only occasional interaction with others, and a sit/stand option every hour. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step 5, the ALJ determined that plaintiff could

3

adjust to the demands of other employment opportunities existing in significant numbers in the national economy including the following jobs: flatware wrapper and routing clerk. Accordingly, the ALJ determined that plaintiff was not under a disability during the relevant time period.

Plaintiff's contends that the ALJ made several errors, including: failing to include her borderline intellectual functioning in the hypothetical questions to the VE; finding that Plaintiff not fully credible with respect to her allegations of pain; failing to make a specific finding in her RFC as to her exertional limitations and to include that she was limited to only occasional balancing, stooping, kneeling, crouching and crawling; and in failing to base the RFC on medical opinion evidence.

*A. Borderline intellectual functioning*

Plaintiff first asserts that the ALJ failed to properly consider her borderline intellectual functioning. Specifically, she alleges that her intellectual functioning falls into the borderline range, which constitutes a significant mental impairment. As such, she maintains, it must be included as a severe limitation and integrated into the hypothetical questions posed to the VE. Plaintiff also contends the ALJ erred in failing to accept or reject the opinions of Dr. Christopher Ricci.

Defendant argues that the ALJ found other impairments "severe," so he continued the five-step analysis and considered all of Plaintiff's impairments, both severe and nonsevere, in reaching his RFC determination. Thus, inasmuch as the ALJ considered her intellectual function at each of the sequential steps of the analysis, any error in failing to find it a severe impairment is harmless. Indeed, the ALJ explicitly considered her intellectual abilities at step three, when he addressed Listing 12.05 and at steps four and five when he discussed her I.Q.. Moreover, while

not referencing a borderline intellectual functioning in the hypothetical questions to the VE, the inquiries nonetheless properly reflected her RFC, including her mental limitations, in hypothetical questions identifying an individual limited to simple, routine, repetitive tasks.

Furthermore, while the ALJ did not specifically reference Dr. Ricci's opinions, he discussed his findings. Dr. Ricci opined, *inter alia*., that Plaintiff was capable of performing following and understanding simple directions, performing simple tasks independently, maintaining attention and concentration and making appropriate decisions. These findings were incorporated into the RFC when the ALJ determined Plaintiff was restricted to performing only simple, routine, repetitive tasks.

Having considered this limitation at the subsequent stages of the sequential analysis, any error ascribed in failing to characterize her intellectual functioning as a severe impairment is harmless. Moreover, Plaintiff has failed to demonstrate that the outcome would have been different had the ALJ listed her borderline intellectual functioning as a severe impairment. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (finding error harmless when ALJ would have reached the same result notwithstanding an error in his analysis). For these reasons, Plaintiff's assignment of error on this issue is without merit.

  *B. Credibility*

Plaintiff next challenges the ALJ's credibility determinations, arguing the reasons for rejecting her allegations were insufficient. She contends that the ALJ discredited her allegations of pain based in part on her failure to follow her physician's directive that she exercise. Plaintiff testified that she attempted to exercise but that she was unable to do so.

"Because he had the opportunity to observe the demeanor and to determine the credibility

of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). The regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; *Craig*, 76 F.3d at 593-96. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); *Craig*, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); *Craig*, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c).

At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See Craig*, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, at *4. Ultimately, the ALJ's findings with regard to a claimant's credibility must "contain specific reasons . . . supported by evidence in the case record." *Id*. at *2. Further, Social Security Ruling 96-7 provides:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7, 61 Fed. Reg. 34483-01.

In 2006, Plaintiff was seen by Dr. Kirit Trivedi for complaints of back and leg pain. She noted that she was able to clean her house and care for her child. The examination reveled that she was overweight but in no pain, with normal gait and posture as well as normal range of motion in her lumbar spine. Dr. Trivedi found that Plaintiff was capable of light work with a sit/stand option. Following a March, 2010 car accident, Plaintiff experienced neck, back and shoulder pain, with stiffness and spasms, for which she was prescribed pain medication. Thereafter, she regained a good range of motion. An MRI in September, 2010 revealed minimal disc bulging and disc dissection at L4-5, with no evidence of disc herniation, spinal stenosis or neural foraminal stenosis. Additionally, Dr. Gary Kaplowitz, with whom Plaintiff treated from 2008–2010, noted Plaintiff's pain stemmed from her obesity, for which he directed her to a diet and exercise program, as also prescribed her pain medication.

The ALJ found while her impairments could reasonably be expected to cause the alleged symptoms, her statements as to the intensity, persistence and limiting effects of the symptoms were not fully credible to the extent they were inconsistent with the RFC. The ALJ's determination was supported by the record. As noted by the Defendant, there is no evidence that Plaintiff's condition deteriorated since the time Trivedi issued an opinion on her ability to

7

perform work activities. In fact, she weighed less when she was subsequently treated by Kaplowitz. Moreover, her examinations yielded findings within normal ranges. Finally, inasmuch as her pain treatment was conservative—limited to pain medication—suggests her pain was manageable, not disabling. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (upholding ALJ's comparison between claimant's level of treatment and her claims of disabling pain in disability).

For these reasons, there is substantial evidence to support the ALJ's finding that Plaintiff's statements of disabling pain were not fully credible.

*C. Exertional and postural limitations*

Plaintiff next argues that an ALJ is required to make a function-by-function assessment and that the ALJ erred in not including a finding as to her ability to lift and carry, or to limit her to only occasional balancing, stooping, kneeling, crouching and crawling.

Although an ALJ is required to evaluate a claimant's RFC on a function-by-function basis, this does not require an ALJ to discuss each function in his decision. *See Pierce v. Colvin*, No. 7:12-CV-129-D, 2013 WL 3326716 (E.D.N.C. June 5, 2013), *adopted*, 2013 WL 3326717 (July 1, 2013); SSR 96-8p, 1996 WL 374184. In determining that she was capable of light work, without exertional limitations, that ALJ tacitly found she was capable of the exertional level associated with light work: lifting or carrying of 20 pounds and frequently lifting or carrying 10 ponds. *See* 20 CFR § 404.1567(b). ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds."). Additionally, the jobs identified by the VE, flatware wrapper and routing clerk, do not involve and balancing, stooping, kneeling, crouching or crawling. Accordingly, Plaintiff has failed to establish that the

8

ALJ erred in making his RFC determination with respect to her exertional and/or postural limitations.

### D. *Medical opinion evidence*

Finally, Plaintiff contends that it was error for the ALJ to reject the opinion consulting state agency physician Dr. Melvin Clayton, who opined that Plaintiff was capable of performing medium work with only occasional balancing, stooping, kneeling, crouching and crawling. She also asserts that the ALJ erred in making an RFC determination without supporting medical opinion evidence. She argues that the RFC is not an administrative function reserved to the ALJ but a medical assessment that should be based on a medical opinion, and cites *Manzo-Pizzaro v. Secretary of Health and Human Servs.*, 76 F. 3d 15 (1st Cir 1996). She further argues that the decision in *Felton–Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011), as a non-published case, should not be followed.

In *Fenton-Miller*, the Fourth Circuit held that an ALJ is "not required to obtain an expert medical opinion as to . . . RFC." *Felton–Miller, supra* at 231. An ALJ's RFC "evaluation need only include a narrative discussion describing how medical and non-medical evidence support the ALJ's conclusion." *Knox v. Astrue*, 327 F. App'x. 652, 657 (7th Cir. 2009) (citation omitted). Despite her arguments to the contrary, the *Manzo-Pizzaro* case, a First Circuit case that is almost 20 years old, is not binding. Nor can this court disregard the *Fenton-Miller* decision. Inasmuch as the Fourth Circuit case law holds that the RFC assessment is an administrative function reserved to the Commissioner, the ALJ did not commit error in formulating the RFC, which he based on the medical evidence of record.

Further, Dr. Clayton's opinion was assigned only little weight because the ALJ found

9

additional limitations relating to her exertional abilities. Moreover, as noted above, neither of the jobs identified by the VE involved balancing, stooping, kneeling, crouching or crawling. As such, Plaintiff's arguments regarding the weight Clayton's opinion is due with respect to such limitations are of limited relevance.

For these reasons, Plaintiff has failed to establish that the ALJ erred in the formulation of her RFC.

## IV. CONCLUSION

Based on the foregoing, it is recommended that the Plaintiff's motion for judgment on the pleadings (DE 23) be denied, that the Defendant's motion for judgment on the pleadings (DE 25) be granted and that the final decision of the Commissioner be affirmed.

SO RECOMMENDED, this the 20th day of March, 2014.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE